UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
EMILY S. WILSON, as Executrix of the Estate of                    :
Joseph A. Wilson, and the ESTATE OF JOSEPH                        :
A. WILSON,                                                        :   **MEMORANDUM DECISION**
                                                                  :   **AND ORDER**
                         Plaintiffs,                              :
                                                                  :   19-cv-5037 (BMC)
         - against -                                              :
                                                                  :
THE UNITED STATES OF AMERICA,                                     :
                                                                  ::
                         Defendant.                               :
----------------------------------------------------------------- X

**COGAN**, District Judge.

Following a six-month period after filing an Amended Claim for Refund with the IRS, plaintiffs bring the present action for the return of $3,221,183. The Government moves for partial dismissal and plaintiffs cross-move for partial summary judgment and judgment on the pleadings. For the reasons discussed below, the Government's partial motion to dismiss is denied. Furthermore, plaintiffs' motion for partial summary judgment is granted and plaintiffs' motion for judgment on the pleadings is denied as premature.

## BACKGROUND

As alleged in the complaint, Joseph Wilson established an overseas trust in 2003. Wilson named himself the grantor of the trust and was its sole owner and beneficiary. The singular purpose of the trust was to "place assets beyond the reach of his then-wife, who he had reason to believe was preparing to file a divorce action against him." (She did.) Wilson funded the trust with approximately $9 million in U.S. Treasury bills, accruing annual interest of 5% or less. All principal had previously been taxed in the United States.

From 2003-2007, Wilson filed "various income tax and information returns" with the IRS, reporting the trust's assets and the interest it accrued. In 2007, upon conclusion of the divorce proceedings, Wilson terminated the trust and transferred the assets – at that point $9,203,381 – back to his bank accounts in the United States.

Despite general compliance with IRS requirements, Wilson was late in filing his Form 3520 for calendar year 2007. Form 3520 is an annual report disclosing distributions from a foreign trust, with different requirements for trust grantors/owners and for trust beneficiaries. After Wilson filed his 2007 Form 3520, the IRS assessed a late penalty of $3,221,183, representing 35% of the distributions from the trust during the 2007 calendar year. Because Wilson had transferred 100% of his trust's funds back to his own domestic accounts during 2007, the penalty also amounted to 35% of his total trust assets.

Wilson had apparently suspected from the beginning that the IRS over-assessed his penalty, as he paid the full $3,221,183 (plus $268,651.52 statutory interest) directly to the IRS Appeals office in Fort Lauderdale. Less than two months later, Wilson submitted a Claim for Refund to the IRS, seeking the entire $3,221,183 plus interest. After waiting the statutorily-required period of six months without word from the IRS, Wilson filed a complaint in the United States Court of Federal Claims. In the complaint, Wilson alleged, *inter alia*, that the IRS erroneously assessed a 35% tax under I.R.C. (hereinafter "26 U.S.C.") § 6048(c), which applies to trust beneficiaries, when it should have assessed a 5% tax under 26 U.S.C. § 6048(b), which applies to a trust grantor/owner.

The Court of Federal Claims dismissed the complaint, without prejudice, finding that Wilson's Claim for Refund "had been improperly executed" and so was not "duly filed." The court therefore held that it lacked subject matter jurisdiction to hear the case. The court further

stated that Wilson "has time to re-file his claim for refund, wait the necessary six months to allow the Commissioner to act on it, then file a new complaint if his claim is rejected."

Even before the Court of Federal Claims issued its decision, Wilson had filed an Amended Claim for Refund "in an effort to cure any possible deficiencies asserted by the Defendant" in its motion to dismiss. Wilson submitted an explanatory statement with his Amended Claim for Refund, again maintaining that

> [t]he IRS' determination was based on its erroneous position that the Trust distributions were made to the taxpayer, as the Trust beneficiary; and therefore, the 35% penalty provision of Code § 6677 and § 6048(c) applied. However, although the taxpayer was the named beneficiary of the Trust, he was also the sole owner/grantor of the Trust. Pursuant to Code § 6048(b), the taxpayer submits that only a 5% penalty is applicable when the owner/grantor fails to timely report a foreign grantor trust distribution made to himself as a beneficiary.

Another six months had gone by with neither hide nor hair of an IRS notification regarding Wilson's Amended Claim for Refund, and Mr. Wilson passed away while waiting.

Plaintiffs filed the present complaint in this Court and allege that Wilson's estate is entitled to a refund on two grounds:

1. That "reasonable cause" existed for Wilson's untimely filing of Form 3520; and

2. That "[i]n assessing a 35% penalty, the IRS' position is based on its erroneous position that, pursuant to I.R.C. § 6058(c), the Taxpayer, as the beneficiary of the Trust, was subject to a 35% penalty on the amount of the trust distributions not timely reported in Form 3520. In so asserting, the IRS ignores I.R.C. § 6048(b) which applies to the Taxpayer herein who was the grantor/owner of the Trust. In these circumstances, any responsibility for the failure to timely report, in Form 3520, the 2007 distributions from the Trust fell on the grantor/owner under I.R.C. § 6048(b) – not I.R.C. § 6048(c). Under I.R.C. § 6048(c), only a 5% penalty may be imposed."

The Government moved to dismiss the second ground. The Court held oral argument on the motion to dismiss, during which plaintiffs cross-moved for partial summary judgment and judgment on the pleadings.

# DISCUSSION

## I.  Government's Partial Motion to Dismiss

The Government moves to dismiss plaintiffs' second ground for a refund – that the IRS wrongfully assessed a 35% penalty under 26 U.S.C. § 6048(c) rather than a 5% penalty under 26 U.S.C. § 6048(b).  The Government argues that the Court lacks subject matter jurisdiction to consider this ground because plaintiffs did not exhaust it below.

"[A] prerequisite to a lawsuit seeking a tax refund is a refund claim filed with the IRS that sets forth in detail the ground for the refund and facts sufficient to apprise the IRS of the basis for the refund."  303 West 42nd St. Enterprises, Inc. v. I.R.S., 181 F.3d 272, 277-78 (2d Cir. 1999).  Specifically, the taxpayer needs to "set forth facts sufficient to enable the Commissioner of Internal Revenue to make an intelligent administrative review of the claim."  Scovill Mfg. Co. v. Fitzpatrick, 215 F.2d 567, 569 (2d Cir. 1954).  "The reason for this is both to prevent surprise and to give adequate notice to the Commissioner of the nature of the claim, and its underlying facts, so that a thorough administrative investigation and determination can be made."  Burlington Northern, Inc. v. United States, 231 Ct. Cl. 222, 226 (1982).  This purpose is met so long as the grounds are "at least impliedly contained in the application for refund."  See Carione v. United States, 291 F. Supp. 2d 141, 146 (E.D.N.Y. 2003).

The Government says that plaintiffs did not sufficiently "apprise the Commissioner of the exact basis" for the refund because they "failed to "appl[y] the formula for computing the penalty amount in § 6677."  But the Court has difficulty fathoming how the Commissioner could validly claim that he lacked notice of plaintiffs' second ground for refund.  See 303 West 42nd St. Enterprises, Inc., 181 F.3d at 277-78.  Throughout the entirety of the proceedings, Wilson and the plaintiffs have maintained (1) that the IRS wrongfully assessed 35% of the gross reportable

4

amount under 26 U.S.C. 6048(c) and 6677(a), and (2) that the IRS should have assessed only 5% of the gross reportable amount under 26 U.S.C. 6048(b) and 6677(b), because Wilson was the grantor/owner of the trust.

Moreover, plaintiffs certainly "set forth facts sufficient to enable . . . an intelligent administrative review of [this] claim." See Scovill Mfg. Co., 215 F.2d at 569. At all stages, Wilson and the plaintiffs provided support to demonstrate that Wilson was the grantor/owner and sole beneficiary of the trust; that Wilson had transferred the entirety of the trust's assets to his own accounts in the United States; the exact amount of money that was in the trust and thereafter distributed during 2007; and the dates of all relevant trust activity. This is to say nothing of the various IRS filings and disclosures specifically related to the trust that Wilson had filed since 2003 and submitted along with his claims and complaints. The Court finds the foregoing more than sufficient to preserve the ground for litigation.

The Government insists at last ditch, however, that over the course of the case plaintiffs have revised their articulation of this ground to the point where at least a part of it now lies beyond the pale of administrative exhaustion. Plaintiffs originally argued that the appropriate penalty for untimely filing Form 3520 is 5% of that year's "trust distributions." Plaintiffs now argue that the penalty is 5% of the "trust assets."[1] The Government contends that this new formulation veers far enough from the administrative claim to now preclude it as a ground for refund in the present lawsuit. That is incorrect.

This nitpicked distinction falls short of the type of variance that would preclude plaintiffs' argument in this Court. See, e.g., Scovill Mfg. Co., 215 F.2d at 569-70 (holding that a

---

[1] This change in plaintiffs' argument likely stems from confusion around the fact that the 5% penalty is assessed against the "gross reportable amount," see 26 U.S.C. § 6677(a)(2), the definition of which changes depending upon whether the filing party is a beneficiary (distribution) or the grantor/owner (assets), compare 26 U.S.C. § 6677(c)(2) with (c)(3).

claim was not barred where the characterization of the tax obligation shifted, but the ultimate theory for refund remained the same). Section 6677(a) of Title 26 provides that "the person required to file such notice or return shall pay . . . [a certain percentage] of the *gross reportable amount*" (emphasis added). At all times it was abundantly clear – and certainly "at least impliedly" expressed – that Wilson sought a refund as a grantor/owner for exactly 5% of the gross reportable amount. See Carione, 291 F. Supp. 2d at 146.

Moreover, plaintiffs "set forth facts sufficient to enable the Commissioner" to determine what that gross reportable amount should be – in this case, the "gross value of the portion of the trust's assets at the close of the year." 26 U.S.C. § 6677(c)(2). At all points, the Commissioner was aware that Wilson had (allegedly) dissolved the trust and transferred all its assets back to the United States prior to the end of 2007, leaving the gross reportable amount at $0. There is thus no serious question that the Commissioner was able to carry out "a thorough administrative investigation and determination" of plaintiffs' claim in this case. See Burlington Northern, Inc., 231 Ct. Cl. at 226. He had all the relevant facts and legal theories at his disposal. That Wilson applied the wrong sub-definition for "gross reportable amount" should not preclude the claim when he also identified the proper legal theory for refund and set forth facts sufficient to show that he deserved the refund under the correct sub-definition.

Wilson has always maintained that he should have been assessed 5% under 26 U.S.C. §§ 6048(b) and 6677(b), and the Commissioner cannot fairly claim that this argument was an unfair surprise. Moreover, plaintiffs' mistaken reading of the statute was both so obvious and so devoid of any real prejudice to the Commissioner's "investigation" that there is no credible argument to the contrary.

6

The cases that the Government sites in opposition are not persuasive. Although United States v. Janis, 428 U.S. 433, 440 (1976), held that "[i]n a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover," this standard is relevant to *proof at trial*, not to administrative exhaustion.

In Bartley v. United States, 123 F.3d 466 (7th Cir. 1997), the Court held that the taxpayer had not exhausted her administrative remedies because she had failed to file the appropriate form, and instead mailed an unsworn letter that "simply sought a refund of an uncertain amount for all three of the tax years in question." Id. at 468. The present case exhibits none of these flaws – Wilson filed the proper Form with the IRS and explained in great detail why he believed the IRS mistakenly assessed 35%, instead of 5%, of the gross reportable amount for calendar year 2007.

In Snead v. Elmore, 59 F.2d 312, 314 (5th Cir. 1932), the Court *did* hold that a claim for refund "must have indicated . . . the amount claimed," but the refund sought in that case required a determination of the "book value of the assets" and whether "the original cost of the stock exceeded the true value of the corporate net assets." These values would have been inaccessible to the Commissioner absent an exact dollar amount claimed. Here, on the other hand, there are only four numbers that define the entirety of the claim in all its possible iterations – 5%, 35%, $0, and $9,203,381.

Nor, in any event, does Snead present the proper standard in this Circuit, where the administrative claim need only "set forth facts sufficient to enable the Commissioner of Internal Revenue to make an intelligent administrative review of the claim." See Scovill Mfg. Co., 215 F.2d at 569. Furthermore, the court in Snead held that the purpose of the exhaustion requirement is to "enable the claimed errors to be corrected by the Commissioner and suits to be minimized."

7

Snead, 59 F.2d at 314.  In our case, that very goal was surely accomplished by presenting the Commissioner with the theory that a 35% assessment was incorrect and the 5% assessment was correct, as well as the documents to prove that was the case and to what a 5% assessment should amount.

      Finally, in Nucorp, Inc. v. United States, 23 Cl. Ct. 234 (1991), the court held that

> [t]he claims merely state that a refund is requested for windfall profit tax overpaid in 1984, due to the net income limitation and withholding error. The claims fail to identify the facts on which they are based. The claims fail to identify the oil producing properties at issue, nor do they provide any of the figures necessary to perform net income limitation calculations. The claims fail to identify the amounts of withholding error. Finally, the claims fail to state the exact amount of taxes allegedly overpaid, or the exact amount of the refunds requested.

All, or even some, of the claim's deficiencies in Nucorp understandably stymied the Commissioner's meaningful review.  However, in our case, plaintiffs *do* identify sufficient facts on which the claim for refund is based; *do* provide the figures necessary to perform a refund calculation (again, there are only four possible figures relevant to the claim); and *do* alert the Commissioner to the erroneous assessment percentage as well as to the proposed correct percentage.

      The Government's motion to dismiss is therefore denied.

## II.    Plaintiffs' Cross-Motion for Partial Summary Judgment

      Plaintiffs' cross-motion for partial summary judgment asks the Court to decide that: (1) the Court has jurisdiction over the grounds raised in plaintiffs' complaint; (2) Wilson, as the sole grantor/owner and sole beneficiary of a foreign trust, is subject only to a 5% penalty for untimely filing IRS Form 3520 under 26 U.S.C. §§ 6048 and 6677; and (3) the 5% penalty should be assessed against the trust's account balance at the close of 2007.

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

A dispute as to a material fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment.  Id. at 256.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  Id.  When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. (internal quotation mark omitted).

The Court's subject matter jurisdiction has been addressed was addressed above regarding plaintiffs' second ground for refund.  See Part I supra.  Both grounds that plaintiffs raise in their complaint are properly before the court.

Plaintiffs ask the Court to "determine that a 5% penalty, pursuant to [26 U.S.C. §] 6048(b), is applicable due to [Wilson's] late filing of the Form 3520 for calendar year 2007." The Government does not disagree that the owner of a foreign trust who untimely files Form

9

3520 is subject to a 5% assessment under 26 U.S.C. §§ 6048(b), but rather contends that the "35% penalty and the 5% penalty are separate penalties that can be applied independently of one another" against Wilson for untimely filing Form 3520.

It is undisputed that Wilson was the sole owner of the foreign trust as well as its sole beneficiary. It is further undisputed that Wilson untimely filed his Form 3520 for calendar year 2007 and that during 2007 Wilson transferred $9,203,381 of the trust's assets to his own bank accounts in the United States. These being the only material facts relevant to the present question, it is ripe for summary judgment. See Fed. R. Civ. P. 56.

"In a statutory construction case, the beginning point must be the language of the statute." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992). Even more to the point, "when the text of a statute is clear, that is the end of the matter." Antonin Scalia, A Matter of Interpretation 16 (Amy Gutmann ed., 1997). This goes for tax statutes as well. See, e.g., C.I.R. v. Lundy, 516 U.S. 235, 249-51 (1996) (deferring to the plain language of 26 U.S.C. § 6512 and the adjacent sections in interpreting the application of a look-back period for a tax refund).

Section 6048(b) of Title 26 applies to a "United States Owner of [a] Foreign Trust." It requires the foreign trust owner to "submit such information as the Secretary may prescribe with respect to such trust for such year." In contrast, 26 U.S.C. § 6048(c) applies to "United States Beneficiaries of Foreign Trusts," who are required to file tax returns with respect to "any distribution from a foreign trust" during any taxable year.

Penalties for violating the provisions of 26 U.S.C. § 6048 are codified under 26 U.S.C. § 6677. Subsection (a) of that statute prescribes the penalty for untimely filing "any notice or return required to be filed by section 6048." In relevant part, 26 U.S.C. § 6677(a)(1) states:

> [T]he person required to file such notice or return shall pay . . . 35 percent of the gross reportable amount. . . . At such time as the gross reportable amount with

> respect to any failure can be determined by the Secretary, any subsequent penalty imposed under this subsection with respect to such failure shall be reduced as necessary to assure that the aggregate amount of such penalties do not exceed the gross reportable amount (and to the extent that such aggregate amount already exceeds the gross reportable amount the Secretary shall refund such excess to the taxpayer).

That provision is modified by 26 U.S.C. § 6677(b)(2), which provides that "subsection (a) shall be applied by substituting '5 percent' for '35 percent'" for returns required to be filed by the owner of a foreign trust.

Because Wilson was the owner of the foreign trust, there is no doubt both that § 6048(b) applied to him and that his violation of § 6048(b) would result in a 5% penalty under § 6677(b). But Wilson was also a beneficiary – indeed, the only beneficiary – of the foreign trust. The Government therefore argues that he could be *independently* penalized as a beneficiary for untimely filing Form 3520 under § 6048(c). The Court disagrees.

At the outset, it is imperative to understand that a person in Wilson's situation – i.e. a sole grantor/owner and sole beneficiary of a foreign trust – would have only been required to file a *single* Form 3520 for fiscal year 2007. So the question then becomes, whether 26 U.S.C. § 6677 permits a single person untimely filing a single IRS form to be penalized as two different people – as an owner *and* as a beneficiary.

A plain language reading of 26 U.S.C. § 6677 counsels that a trust owner cannot be penalized as a beneficiary for violating a provision of 26 U.S.C. § 6048(b). There is a clear instruction under 26 U.S.C. § 6677(b)(2) to "substitute" 5% for 35%, not to choose between the two or to simply apply a 5% assessment without reference to an otherwise applicable penalty. Therefore, the statute mandates that the 5% *replace* the 35% whenever there is a "case of a return required under section 6048(b)."

When a foreign trust owner is required to file Form 3520, it falls under 26 U.S.C. § 6048(b)'s purview of "such information as the Secretary may prescribe with respect to" an owner of a foreign trust. Undeniably, then, a violation of that section should be treated under 26 U.S.C. § 6677(b)(2)'s substitution clause, which replaces "35 percent" with "5 percent." But even if this were not inescapably evident, "in case of doubt [in the interpretation of statutes levying taxes,] they are construed most strongly against the Government, and in favor of the citizen." Gould v. Gould, 245 U.S. 151, 153 (1917).

Moreover, the Government's argument, if accepted, would result in an irreconcilable textual conflict. Section 6677(a)(1) of Title 26 states that once the Secretary determines the gross reportable amount "with respect to any failure," the Secretary must ensure that the taxpayer's penalties under § 6677 "do not exceed the gross reportable amount." Although this language is primarily concerned with subsequent late fees, the underlying directive appears to limit all penalties for a violation to no more than the "gross reportable amount." Therefore, it follows that a taxpayer should not be liable for any two penalties if their combined assessment would add up to more than the gross reportable amount for any one violation.

But that would be the case if the Government got its way. Because the gross reportable amount for an owner's untimely filing Form 3520 under § 6677(c)(2) is "the gross value of the portion of the trust's assets at the close of the year," Wilson's $0 in trust assets at the end of 2007 yields a $0 gross reportable amount. Any additional penalty resulting from the same "failure" would violate the statute. The Government seeks $3,221,183 above $0, which violates the statute.[2]

---

[2] This conclusion would appear to result from any joint owner/beneficiary's transfer to himself of more than roughly 75% of his foreign trust's assets in a given year. In such cases, the assessment for a beneficiary of 35% of his distributions would always exceed the "gross value . . . of the trust's assets" remaining at the close of the year.

12

Beyond the statutory text, certain aspects of Form 3520 itself imply that a foreign trust owner who receives distributions from his own trust should be treated as an owner – and not as a beneficiary – for failures related to the Form's filing. For example, Part III of the instructions for the 2007 Form 3520 states:

> If you received an amount from a portion of a foreign trust of which you are treated as the owner and you have correctly reported any information required on Part II and the trust has filed a Form 3520-A with the IRS, do not separately disclose distributions again in Part III.

Part II of Form 3520 is only to be filled out by the "U.S. Owner of a Foreign Trust" and Form 3520-A is the "Annual Information Return of Foreign Trust With a U.S. Owner." Thus, if a trust owner has received a distribution from his trust and thereafter reported the distribution in his 3250-A filing, he is not required to otherwise report the distribution on Form 3520. From this, it would appear that Form 3520 disregards the beneficiary status of the trust owner in favor of his owner status, at least for the limited purpose of tracking distributions to the owner.

The IRS can therefore assess *only* the 5% penalty under 26 U.S.C. § 6677 – not *both* or *either* the 5% and/or 35% penalty – for Wilson's untimely filing of his 2007 Form 3520.

Plaintiffs next ask the Court for summary judgment as to whether "the 5% penalty should properly be based on the amount of the [trust's] account balances, if any, at the close of 2007, pursuant to [26 U.S.C. §] 6677(c)(2)." It should. Because Wilson is treated as the owner of the foreign trust for the purpose of his Form 3520 filing, he is liable for penalty under 26 U.S.C. § 6677(b) for a violation of 26 U.S.C. § 6048(b)(1). Under 26 U.S.C. § 6677(b), the proper assessment is "5% of the gross reportable amount." The gross reportable amount for "a failure

---

The same is true for an owner/beneficiary's transfer to himself of less than 4% of his trust's assets during a given year. In that case, the assessment for a trust owner of 5% of the remaining trust assets would always exceed the "gross amount of the distributions." See 26 U.S.C. § 6677(c)(1).

13

relating to section 6048(b)(1)" is "the gross value of the portion of the trust's assets at the close of the year treated as owned by the United States person."

### III. Plaintiffs' Cross-Motion for Judgment on the Pleadings

Plaintiffs also cross-move for judgment on the pleadings. However, the Government has not yet answered plaintiffs' complaint. Because a party may only move for judgment on the pleadings "after the pleadings are closed," that motion was premature. See Fed. R. Civ. P. 12(c). Therefore, the motion for judgment on the pleadings is denied without prejudice except to the extent that this decision disposes of arguments that plaintiff intended to make.

## CONCLUSION

The Government's motion to dismiss is denied. Plaintiffs' [17] motion for partial summary judgment is granted and plaintiffs' motion for judgment on the pleadings is denied. **SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
 November 17, 2019