# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Emily S. Wilson, as Executrix of the Estate of Joseph A. Wilson and the Estate of Joseph A. Wilson | ) ) ) ) | |
| Plaintiffs, | ) ) | Case no. 19-cv-5037 |
| v. | ) ) ) ) | Judge Brian M. Cogan |
| THE UNITED STATES | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, Emily S. Wilson, as Executrix of the Estate of Joseph A. Wilson and the Estate of Joseph A. Wilson, allege and state the following as their First Amended Complaint:

1. This is an action arising under the Internal Revenue Code of 1986, as amended, and codified in Title 26 United States Code, for recovery of the tax penalty, together with interest, paid by Joseph A. Wilson, deceased ("Taxpayer" or "Mr. Wilson"), for the late filing of Form 3520 for calendar year 2007.

2. The penalty at issue, in the sum of $3,221,183, was erroneously and unlawfully assessed and collected by the Internal Revenue Service ("IRS"), pursuant to Internal Revenue Code ("I.R.C.") § 6677 due to the Taxpayer's late filing of Form 3520 for calendar year 2007.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1346(a)(1) in that the amount paid by the Taxpayer represents full payment of the penalty at

issue together with statutory interest thereon. This Court found that it had proper jurisdiction in this matter in its decision filed on November 18, 2019 [Dkt. No. 21].

4. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(3).

## THE PARTIES

5. Joseph A. Wilson passed away on June 16, 2019. He resided in Great Neck, New York, located in Nassau County.

6. The filing of this suit has been properly authorized by Emily S. Wilson, duly appointed as Preliminary Executor of the Estate of Joseph A. Wilson, pursuant to the Preliminary Letters Testamentary, dated August 14, 2019, by the Surrogate's Court of Nassau County, New York.

7. The Defendant is the United States.

## PROCEDURAL BACKGROUND

8. Mr. Wilson established the Perfect Partner Trust ("Trust") in 2003. The Trust was drafted by New York counsel retained by the Taxpayer. Mr. Wilson was the named grantor of the Trust. The Trust was professionally administered by Schindler's, an established and reputable company in the United Kingdom, selected by Mr. Wilson. The Trust held bank accounts in Switzerland and Lichtenstein. The accounts were funded by Mr. Wilson in 2003 with approximately $9 million which was mostly in the form of U.S. Treasury bills. They accrued annual interest of 5% or less.

9. At the conclusion of the IRS examination, the Revenue Agent acknowledged in his Thirty Day letter that the Trust was <u>not</u> established for tax avoidance purposes. Instead, the Revenue Agent correctly concluded that the Taxpayer established the Trust in an attempt to place

assets beyond the reach of his then-wife, who he had reason to believe was preparing to file a divorce action against him. In fact, a divorce action was filed by her in 2004.

10. In 2007, after the conclusion of the divorce proceedings, the Taxpayer terminated the Trust. Its assets, in the sum of $9,203,381, were transferred in that year to accounts held by the Taxpayer in major financial institutions in the United States. Virtually all of these funds represented principal which had previously been taxed in the United States. At the time these distributions were made, the Taxpayer was the owner/grantor of the Trust as well as its sole beneficiary. This was fully consistent with the various income tax and information returns filed by Mr. Wilson with the IRS reporting the trust assets and his earnings from it. The Thirty Day letter, prepared by the Revenue Agent, similarly treated Mr. Wilson as the owner/grantor of the Trust. Mr. Wilson was totally unaware of any requirement to file Form 3520 reporting the distributions from the Trust.

11. For calendar years 2003-2004, information returns pertaining to the Trust and its assets were timely filed with the IRS. All pertinent information for the Trust was provided to the IRS, including a copy of the trust instrument itself. For 2005-2007, information returns were not timely filed. The IRS assessed various penalties. All penalties, with the exception of the penalty assessed for calendar year 2007 for the late filing of Form 3520 (which is at issue herein) were settled in IRS Appeals. The settled penalties were promptly paid in full, together with statutory interest.

12. As a result of the Taxpayer's late filing of Form 3520 for calendar year 2007, the IRS assessed a penalty of $3,221,183. This represented 35% of the trust distributions made to Mr. Wilson in 2007. In making this assessment, the IRS erroneously took the position that these distributions were governed by I.R.C. § 6048(c) — a distribution made to a "beneficiary" and

3

reportable by Mr. Wilson as "the beneficiary." The Plaintiffs vigorously dispute this position. They contend that these distributions were properly reportable by Mr. Wilson as the owner/grantor of the Trust - - <u>not</u> as the trust beneficiary pursuant to I.R.C. § 6048(c). No Treasury Regulations under I.R.C. § 6048 have been promulgated.

13. On or about June 26, 2017, the Taxpayer paid the full amount of the penalty ($3,221,183) plus statutory interest ($268,651.52). This payment was submitted directly to the IRS Appeals office located in Fort Lauderdale, Florida.

14. The Taxpayer, through his counsel, proceeded to prepare and submit to the IRS a Claim for Refund and Request for Abatement (Form 843). The Claim for Refund was received by the IRS on August 23, 2017. A true and accurate copy of the Claim for Refund (bearing the date stamp receipt of August 23, 2017) is attached hereto as Exhibit A (the attachments to the Claim for Refund are not included).

15. Since the filing of this Claim for Refund (Exhibit A), the IRS has not notified the Plaintiffs, the Taxpayer or their counsel of any action taken on the Claim for Refund.

16. On or about March 19, 2018, the Taxpayer timely filed a Complaint seeking the refund of the $3,221,183 penalty, together with statutory interest, in the United States Court of Federal Claims (Case No. 18-cv-00408-T). An Answer was filed by the Defendant on or about August 15, 2018.

17. On August 16, 2018, the Taxpayer filed a Motion for Partial Summary Judgment. In it, Mr. Wilson maintained that, as a matter of law, only a 5% penalty was due under I.R.C. § 6048(b) (assuming, for the sake of discussion, that there was no "reasonable cause" for the late filing which would have eliminated any penalty). On December 7, 2018, the Defendant filed a Motion to Dismiss, asserting that the Court lacked subject matter jurisdiction in that the Claim

4

for Refund in question had not been signed by the Taxpayer under oath, but instead (according to the Defendant) had improperly been executed and filed by his counsel pursuant to a Power of Attorney (Form 2848) executed by Mr. Wilson.  The Taxpayer opposed this Motion.

18. Out of an abundance of caution, in an effort to cure any possible deficiencies asserted by the Defendant, the Taxpayer's counsel submitted to the IRS an Amended Claim for Refund which the Taxpayer signed under penalties of perjury.  As reflected by the stamped returned copy of the Amended Claim for Refund, it was received by the IRS on January 11, 2019.  A true and accurate copy is appended as Exhibit B.

19. On February 27, 2019, the Court granted the Motion to Dismiss, entering an Order dismissing the case without prejudice.  A true and accurate copy of the Order is appended as Exhibit C.  On March 8, 2019, the Court entered Judgment, dismissing the complaint without prejudice.  A true and accurate copy of the Judgment is attached as Exhibit D.

20. The Amended Claim for Refund was timely filed with the IRS within the two-year period permitted by I.R.C. § 6511(a) following the payment of the penalty in question.

21. Following the receipt of the Amended Claim for Refund (Exhibit B), the IRS has not notified the Taxpayer or his representative of any action taken on it.

22. By timely filing the Amended Claim for Refund with the IRS, the Taxpayer fully met the requirements of I.R.C. § 7422(a).

23. Pursuant to I.R.C. § 6532(a)(1), a suit may be brought pursuant to I.R.C. § 7422(a) for the recovery of an Internal Revenue penalty following the expiration of six months from the date of filing of a Claim for Refund.  The six month period herein (commencing on January 11, 2019) has expired.  The statutory prerequisites for the bringing of this action have been fully satisfied.

24. The IRS' assessment and collection of the penalty at issue herein, together with statutory interest, is erroneous and lacks any legal foundation . The penalty should be abated in full. The Plaintiffs should receive a full refund of the penalty , together with statutory interest.

## CLAIMS FOR RELIEF

### First Cause of Action

### (Refund and Abatement of the I.R.C. § 6677 Penalty)

25. The Plaintiffs re-alleges and incorporates by reference all of the preceding allegations herein.

26. Pursuant to I.R.C. § 7422, the Plaintiffs timely filed this civil action to recover a refund of the penalty paid by the Taxpayer in the amount of $3,221,183, together with statutory interest, and to seek abatement of the penalty in its entirety.

27. The IRS has arbitrarily, erroneously and illegally assessed and collected the penalty in question for the reasons stated in this First Amended Complaint and in the Amended Claim for Refund (Exhibit B hereto) which is incorporated herein by reference.

28. The penalty assessed against the Taxpayer, pursuant to I.R.C. § 6677, is excessive and contrary to law.

29. The Plaintiffs are entitled to recover statutory interest paid by the Taxpayer on the penalty, together with further statutory interest, as provided in I.R.C. § 2411.

30. In assessing a 35% penalty, the IRS' position is based on its erroneous position that, pursuant to I.R.C. § 6048(c), the Taxpayer, as the beneficiary of the Trust, was subject to a 35% penalty on the amount of the trust distributions not timely reported in Form 3520. In so asserting, the IRS ignores the fact, beginning in 1997 and continuing through 2007, it required the owner/grantor of a trust to file an annual Form 3520 and ensure that the foreign trust files an

annual Form 3520-A and furnish the annual statements to its U.S. owners and U.S. beneficiaries. (In the event that the trust fails to file a Form 3520-A, then the trust owner is required to repair a "substitute" Form 3520-A and attach it to Form 3520. *See*, Form 3520, Part II, Line 22.

31. The legislative history for I.R.C. § 6048(c) reflects that the 35% penalty was not intended to be applied when a grantor trust distribution is made to a U.S. owner who was also the sole beneficiary of the trust. The reasons for these changes were explained by the Joint Committee on Taxation in its staff report ("Report"). *See*, Joint Committee on Taxation, General Explanation of Tax Legislation Enacted in the 104th Congress, at 267-273 (December 19, 1996). (Exhibit E hereto). As set forth on page 269 ("Reasons for Change"), Congress believed that the U.S. grantor trust rules (under I.R.C. §§ 671-678) were being used as a vehicle to avoid the payment of tax by the use of a foreign trust. As explained in the Report, under the prior grantor trust rules, only the owner of the trust (<u>not</u> the trust beneficiary) was subject to U.S. tax on the trust's income. *Id.* Thus, if a non-resident alien created a foreign trust with a U.S. beneficiary, the prior grantor trust rules did not tax a distribution to the U.S. beneficiary. *Id.* If the alien's home country did not tax the income, the income would not be subject to tax either in the foreign country or the United States. *Id.* So that the trust's beneficiary would be required to include trust deductions in his/her taxable income, Congress amended I.R.C. § 6048(c) in 1996 to require annual reports by the beneficiary for any distributions; and provided that the amount of any distribution from a foreign trust was includable in the beneficiary's gross income as an accumulation distribution (unless adequate records were provided to determine the proper treatment of the distribution).

32. In the circumstances presented by the present case, the underlying rationale for the amendment to Code § 6048(c) does not apply. Mr. Wilson, as the U.S. owner/grantor, was

<u>already</u> required to report all of the trust income in his taxable income in the first instance. A distribution to a grantor is non-taxable given that the owner of the grantor trust is required, in any event, to include all of the trust earnings in gross income regardless of whether there was an actual distribution from the trust. The 1996 amendment to the Code, and the abuse it intended to prevent, did not apply to the circumstances presented herein.

33. Under I.R.C. §§ 641-648, once a person is treated as the "owner" of any portion of a grantor trust, the trust's income is taxable to that person even if none of the income is distributed. Further, that person is <u>not</u> treated for any purpose as a beneficiary. Accordingly, since Mr. Wilson, as, the owner and grantor of the grantor trust, was required to include all of the trust's income in his reportable income in the year it was earned by the trust, it is irrelevant for tax purposes whether those earnings were later distributed by the Trust to Mr. Wilson. Since the Trust's distributions were <u>not</u> taxable events for Mr. Wilson, and the 2007 distributions were merely the repatriation of his own funds from outside the United States to his accounts in the United States, there is no legitimate rationale for the imposition of a 35% penalty for the failure to timely report those distributions as the Trust's beneficiary.

34. I.R.C. § 6048(c) makes it clear that its provisions were <u>only</u> intended to apply to a beneficiary who was <u>not</u> also a grantor of the trust. I.R.C. § 6048(c) provides that if a United States person receives, during any taxable year, a distribution from a foreign trust, such person is to make a return with respect to such trust for such year which includes: the name of the trust; the aggregate amount of distributions received; and, such other information as the Secretary may prescribe. I.R.C. § 6048(c)(2) provides that in the case of distributions made by a foreign trust, (if adequate records are not provided, so that the Secretary can determine the proper treatment of any distribution), ". . . such distributions <u>shall</u> be treated as an accumulation distribution

8

includible in the gross income of the distributee." (emphasis supplied). This has no application to an owner/grantor who is taxable each year on the trust's annual earnings in the first place. The accumulating distribution provisions have no application to an owner/grantor of the trust.

35. The IRS has interpreted I.R.C. § 6048(c)(2) as applying to <u>all</u> distributions by a grantor trust to a beneficiary: "<u>any</u> distribution from a foreign trust whether from income or corpus, to a U.S. beneficiary will be treated as an accumulation distribution" (emphasis supplied). *See,* Notice 97-34, 1997-1 C.B. 422, 429. In contrast, the income of a grantor trust is includable, on an annual basis, in the taxable income of the grantor. *See*, I.R.C. § 671. Under the grantor trust statutory provisions, the grantor <u>must</u> include the trust's annual income in his/her own taxable income <u>even</u> <u>if</u> <u>none</u> of that income is distributed to the grantor.

36. The accumulation distribution provisions of I.R.C. §§ 666 and 667, referenced in I.R.C. § 6048(c)(2), do <u>not</u> apply to the grantor. Instead, pursuant to I.R.C. §§ 665-668, they only pertain to the taxable income of a trust beneficiary who receives a trust distribution which exceeds the current income of the trust for that year. These provisions are known as the "throwback rules" under which a beneficiary receiving an accumulation distribution would be taxed as if the trust had made the distribution in the year in which it originally accumulated the income.

This reflects that I.R.C. § 6048(c) was <u>not</u> intended to apply to trust distributions made to the grantor. Otherwise, the accumulation distribution provision in I.R.C. § 6048(c)(2) would directly conflict with the statutory requirement that the grantor include all trust earnings in his/her annual taxable income. As a result, there is no conflict between the statutory provisions in I.R.C. §§ 6048(b) and (c). I.R.C. § 6048(c) can properly be read in tandem with I.R.C. § 6048(b) as well as with the grantor trust income tax provisions of the Code.

37. The Plaintiffs submit that the statutory authority for the IRS' requiring the annual filing of Form 3520 by the owner/grantor of a foreign trust, beginning in 1997 and continuing until the 2010 amendment of I.R.C. § 6048(b), was I.R.C. § 6048(b); or, alternatively, I.R.C. § 6001. Further, the Plaintiffs submit that these two Internal Revenue Code sections, in combination, provided the IRS with the proper statutory authority.

38. I.R.C. §6001 provides in pertinent part:

> Every person liable for any tax imposed by this title, or for the collections thereof, shall keep such records, render such statements, make such returns and comply with such rules and regulations as the Secretary may from time to time prescribe.

39. The 2007 Instructions for Form 3520 reflected that the IRS viewed I.R.C. § 6001 (as well as I.R.C. §§ 6011 and 6012(a)) as the statutory authority for the IRS requiring an owner/grantor to file an annual Form 3520. These instructions stated (page 10):

> Our authority to ask for information is sections 6001, 6011, and 6012(a) and their regulations, which require you to file a return or statement with us for any tax for which you are liable. Your response is mandatory under these sections.

40. The IRS has previously recognized that I.R.C. § 6001 provided it with statutory authority to require taxpayers to file a new form it had created. This was set out in I.R.S. Notice 2003-75. 2003-2 C.B. 1204, 2003 IRB Lexis 474. In this Notice, the IRS announced that, under the authority provided to it by I.R.C. § 6001, it had designed a new form that a U.S. citizen or resident alien was to file who held an interest in a RRSP or a RRIF. The new form was to be completed and attached to the taxpayer's Form 1040 rather than the information being included in Form 3520. In this notice, the IRS announced that there was to be a new reporting regime, effective for years beginning after December 31, 2002, "in lieu of the filing obligations under I.R.C § 6048 (Form 3520, *Annual Return to Report Transactions with Foreign Trusts and*
10

*Receipt of Certain Foreign Gifts, and* Form 3520-A*, Annual Information Return of Foreign Trust With the U.S. Owner*)". This was Form 8891: *U.S. Information Return for Beneficiaries of Certain Canadian Registered Retirement Plans* (2004). The 2004 version of the form is publically available on the IRS' website at https://www.irs.gov/pub/irs-prior/f8891--2004.pdf.

41. The Internal Revenue Code does not provide for a penalty for the late filing of a tax return as authorized by I.R.C. § 6001. The Plaintiffs submit that this led the IRS to state in its Chief Counsel Advisory Memorandum 201150029, 2011 IRS CCCA LEXIS 254 that: "A U.S. person treated as the owner of a foreign trust who fails to file Form 3520 when required under §6048(b) will be subject to a penalty for such failure only to respect to tax years beginning after March 18, 2010." This is directly applicable to Mr. Wilson and his late filing of Form 3520 for 2007. Accordingly, for this reason, standing alone, there should be no penalty for Mr. Wilson's late filing of Form 3520 for 2007.

42. Courts have uniformly recognized that I.R.C. § 6001 provides the IRS with authority to require that tax returns be filed "as the Secretary from time to time may prescribe." *See Otte v. United States*, 419 U.S. 43, 52 (1974) (I.R.C. §§ 6001 and 6011 relied on for the trustee's requirement to prepare and submit to wage claimants and to taxing authorities the reports and returns required of employers under the Internal Revenue Code); *Blumenfield v. United States*, 306 F.2d 892, 895 (8th Cir. 1962) (finding Commissioner was authorized under I.R.C. § 6001 to prescribe reasonable forms and regulations to facilitate the collection of the liquor stamp tax and the Commissioner did not exceed its authority in doing so); *Perkins v. Comm'r*, 262 F. App'x 119, 120 (11th Cir. 2008) (rejecting argument that the Commissioner was without authority to enforce the tax laws against the petitioner, holding that I.R.C. § 6001 gave the Commissioner the authority to keep such records and make such returns as the Commissioner

may from time to time prescribe); *In re Hahn,* 200 B.R. 249, 251 (M.D. Fla. 1996) (under I.R.C. §§ 6001 and 6011, "Courts have continually recognized the authority to require the filing of tax returns").

43. Should there be any ambiguity as to whether the reporting responsibility for a distribution received by a trust beneficiary, who was also the owner/grantor, fell on the owner/grantor in that capacity or on the owner/grantor as the beneficiary, then that ambiguity must be resolved in favor of the taxpayer. That applies to the issues presented in this case.

44. The Supreme Court, as well as numerous Circuit Courts, including the Second Circuit Court of Appeals, have <u>uniformly</u> held that a taxpayer cannot be subjected to a tax penalty <u>unless</u> the words of the statute <u>plainly</u> impose that penalty. The Supreme Court has held that where a statute imposing a tax penalty is not clear as to whether the penalty may be imposed, or on whom it may be imposed, the ambiguity <u>must</u> be resolved in the taxpayer's favor. *See*, *Gould v. Gould*, 245 U.S. 151 (1917) and *Comm'r of Internal Revenue v. Acker*, 361 U.S. 87, 91 (1959) ("[t]he law is settled that 'penal statutes are to be construed strictly'"). The Second Circuit Court of Appeals has similarly held. *See Exxon Mobil Corp. v. Comm'r*, 689 F.3d 191, 199 (2nd Cir. 2012) ("we are particularly mindful of the longstanding canon of construction that where 'the words [of a tax statute] are doubtful, the doubt must be resolved against the government and in favor of the taxpayer,'" quoting from, *United States v. Merriam,* 263 U.S. 179, 188 (1923). *See also U.S. v. Marshall*, 798 F.3d 296, 318 (5th Cir. 2015) ("if 'the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.'").

45. Forms 3520 and 3520-A for 2007, as well as their respective instructions (Exhibits F and G hereto, respectively), make it entirely clear that the IRS has interpreted the

reporting requirements for trust distribution as falling on the owner/grantor even though that individual is the same person as the beneficiary.

46. The reporting obligations for a trust distribution, as detailed in the 2007 Forms 3520 and 3520-A, and their respective Instructions, were as follows:

   a. The instructions to Form 3520, in its "Who Must File" section, stated:

   The instructions for Form 3520 appearing on page 1, para. no. 2, stated that the <u>owner</u> of any part of the assets of a foreign trust is required to complete the identifying information on page 1 of Form 3520 as well as Part II. Part III of Form 3520 requested information for distributions to a U.S. person. This information would have been provided by a beneficiary of the trust. However, as made clear by the introductory instructions to Part III, if the owner received a distribution from a foreign trust, and provided the required information under Part II, then the information requested in Part III need not be provided.

   b. Line 22 of Form 3520 asked whether the foreign trust filed Form 3520-A for the current year. The 2007 instructions for Form 3520-A (page 1) specified that a foreign trust for the U.S. owner must file Form 3520-A, prepared by the trust, in order for the U.S. owner to satisfy his/her annual information reporting requirements under Code § 6048(b). If, for whatever reason, the trust did not file Form 3520-A, Line 22 required that the owner file a "substitute" Form 3520-A. In either event, Form 3520-A, lines 5 and 17, required full disclosure of any trust distribution. Those disclosure obligations fell squarely on the owner — <u>not</u> the beneficiary.

c. Form 3520-A specified (in its heading) that it constituted an "Annual Information Return of Foreign Trust With a U.S. Owner." Line 17b required information on "Distributions to U.S. Owners", including the date of distributions and their fair market value. Line 17c required that the trust provide information on distributions to U.S. beneficiaries.

d. When there has been a trust distribution, the information required by Form 3520 is the <u>same</u> for the owner/grantor as for a beneficiary. See, Form 3520, Part II (for US "Owner" and Part III ("Distributions to a US Person"). This information need <u>not</u> be provided twice when the owner/grantor and beneficiary are the same individual. The instructions to Part III (page 6) clearly stated that, if a U.S. person received a distribution from a trust for which that person was treated as the owner (and the distribution was correctly reported in Part II and the trust had filed Form 3520A with the IRS), then "do not separately disclose distributions again in Part III."

e. The above disclosure obligations fell on the U.S. <u>owner</u> since a beneficiary had no obligation to file a Form 3520-A. As made clear by the introductory paragraph to the instructions for Form 3520-A ("Who Must File"), the owner was "responsible for ensuring that the foreign trust files Form 3520-A and furnishes the required annual statements to its U.S. owners and U.S. beneficiaries." If the foreign trust did not file a Form 3520-A, then the owner was directed to prepare a "Substitute" Form 3520-A and attach it to Form 3520. It is undisputed that the Trust herein did not file a Form 3520-A for 2007. Part I, Line 5, asked whether the trust transferred any property to another person during the tax year. The instructions

14

for Line 5 required that there be an attached "statement" if there was any such transfer. The "statement" was required to include the U.S. taxpayer's identification number or residence of the person to whom the property was transferred, a general description of the property transferred, an identification of the parties to the transaction as well as a description of the property transferred, including its estimated fair market value and the adjusted basis of the property. The "statement" was also to include a description of the trust ownership structure setting forth the name and U.S. taxpayer identification number. All of these disclosure obligations <u>fell on the owner</u> in that, once again, it was the <u>owner</u> who had the obligation to ensure that the trust completed this form. Otherwise, the <u>owner</u> was obligated to prepare and file a "substitute" Form 3520-A containing the same information. This was to be filed together with Form 3520.

f. As further confirmation that it was Mr. Wilson's responsibility, as the owner, to report the 2007 trust distributions, a *pro-forma* Form 3520 return for Mr. Wilson for 2007 is appended hereto as Exhibit H. This return correctly reflects the manner in which the 2007 distributions from the Trust should have been reported according to Form 3520 itself and its instructions. As reflected therein, the reporting should have been by Mr. Wilson as the owner – <u>not</u> the beneficiary. As required by the instructions to Form 3520, Part II, Line 22, would have indicated that the foreign trust did not file Form 3520-A for the current year. Therefore, as required by Line 22, a "Substitute Form 3520-A" was attached. Part II, Line 23 states that the sum of $9,203,381 was the gross value of the portion of the foreign trust for which Mr. Wilson was treated as the owner. In the "Substitute Form

15

3520-A", the attached statement, as required by Part I, Line 5, would have provided the information required by the instructions for Part I, Line 5. These appeared on page 3 of the instructions to Form 3520-A (right hand column). Pursuant to these instructions, this included: the name of the U.S. taxpayer and a general description of the property transferred, including the estimated fair market value. The trust distributions are reported on the "Substitute" Form 3520-A, line 17(b). The "Substitute" Form 3520-A is attached to Form 3520 pursuant to the directive in its Part II, line 22 ("attach a substitute Form 3520-A for the foreign trust").

47. As set forth above, Forms 3520 and 3520-A, and their respective instructions, reflected the IRS' analysis and interpretations of Internal Revenue Code §§ 6001 and 6048(b) and (c). Those interpretations should be followed herein. A contrary position — that the reporting obligation fell on Mr. Wilson as the beneficiary under I.R.C. § 6048(c) — would conflict with the IRS' own analysis and interpretation of the Internal Revenue Code.

48. In addition to Form 3520 and its instructions, as early as 2003, the I.R.S. made it clear that the trust owner was required to file an annual Form 3520. *See, e*Notice 2003 – 25, 2003 IRB LEXIS 144, which stated in pertinent part:

> Internal Revenue I.R.C. §6048 requires information reporting with respect to certain foreign trusts. Persons subject to these information reporting rules must file Form 3520 . . . Form 3520 generally is filed on an annual basis on or before the due date for the U.S. owner's or U.S. beneficiary's income tax return

Further, the I.R.S. has stated that, prior to the 2010 amendment of I.R.C. §6048(b), it interpreted the Internal Revenue Code as providing it with authority to require the owner/grantor of a foreign trust to file an annual Form 3520. These statements appear in the Internal Revenue

16

Manual ("IRM"). The IRM is the source for IRS policies, authorities and procedures. See, IRM 1.11.5.1.2, 2017 WL 7415395 (2017).

IRM 3.21.19.10, 2012 WL 7425702 (2012) (as in effect December 2012) stated, in pertinent part, in para. no. 2:

> Note: Beginning with 1997, Form 3520 and its instructions required U.S. Owners of a foreign trust to complete Part II of Form 3520 even if they did not have any transactions with the trust that were reportable on Parts I or III. However, this requirement was not explicitly stated in the Code. Recent legislation, effective for tax years beginning after March 18, 2010, now codifies this requirement that a U.S. owner of a foreign trust must file a Form 3520 every year.
>
> Reminder: Inform the U.S. Owner that they must complete the 2nd checkbox on page 1 of Form 3520, and Part II of the form.

This language was repeated verbatim in IRM 3.21.19.11 (Jan. 1, 2015) (as in effect December 2014 (page 2). The important "Note" language was once again repeated in IRM 3.21.19.12 (Nov. 10, 2015) (page 2) (as in effect December 2016).

49. At no time has the IRS stated in any public document or publication that there was no statutory authority, prior to the 2010 amendment of I.R.C. § 6048(b), for it to require the owner/grantor of a foreign trust to file an annual Form 3520.

50. Further, pursuant to I.R.C. § 6677(d), no penalty may be assessed or collected for the late filing of Form 3520 which is due to "reasonable cause". "Reasonable cause" existed for the Taxpayer's late filing of Form 3520 in 2007. Mr. Wilson was a retired businessman in his late-80s at the time. He was not aware of Form 3520 or any requirement that this form be filed. Mr. Wilson had never been advised that Form 3520 should be filed and was not aware of this requirement from any source.

51. IRM 20.1.1.3.2.2.6 ("Ignorance of the Law") specifies in its subsection (1) that:

"In some instances taxpayers may not be aware of specific obligations to file and/or pay taxes". In subsection (4), the I.R.M. provides that the taxpayer may have reasonable cause from noncompliance because of ignorance of the law if "A reasonable and good faith effort was made to comply with the law, or B. The Taxpayer was unaware of [the] requirement and could not reasonably be expected to know of the requirement."  Mr. Wilson was not aware of any requirement to file Form 3520 for calendar year 2007 and could not reasonably have been expected to be aware of this requirement.  Accordingly, no late filing penalty under Section 6677 should have been assessed.

52. "Reasonable cause" existed for Mr. Wilson's failure to timely Form 3520 for calendar year 2007.  Accordingly, no penalty should have been assessed or collected.

## PRAYER FOR RELIEF

Wherefore, for the above stated reasons, the Plaintiffs submit that this Court should:

(1) Determine that the penalty at issue herein, together with statutory interest, was arbitrary, erroneous and contrary to law and should be abated in full;

(2) Determine that the Plaintiffs are entitled to a refund of the $3,221,183 penalty paid by the Taxpayer, together with statutory interest thereon, as provided by law;

(3) Determine that the Plaintiffs are entitled to an award of reasonable attorney's fees and expenses incurred by reason of this action.

(4) Provide such other and further relief as to which the Plaintiffs are entitled.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues so properly triable.

Date: September 27, 2021                    Respectfully submitted,

/s/ Robert M. Adler
Robert M. Adler
Nossaman LLP
1401 New York Ave.
Suite 800
Washington, D.C. 20005
(202) 887-1428
(202) 466-3215 Facsimile

Gary Redish
Michael Cohen
Winne Banta, Basralian, & Kahn, P.C.
21 Main Street
Court Plaza South – West Wing
Hackensack, NJ 07601

(201) 487-3800
(201) 487-8529 Facsimile

*Counsel for Emily S. Wilson, as*
*Executor of the Estate of Joseph A. Wilson*
*and the Estate of Joseph A. Wilson*